**UNITED STATES of America**

v.

**Jesse L. MATHIS, Appellant.**

**No. 75–1373.**

United States Court of Appeals, District of Columbia Circuit.

Submitted without Argument Feb. 17, 1976.

Decided May 18, 1976.

Louis A. Kleiman, New York City (appointed by this Court), for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, James F. Rutherford and Frederick A. Douglas, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before BAZELON, Chief Judge, WILKEY, Circuit Judge, and MERHIGE,* Judge, United States District Court for the Eastern District of Virginia.

PER CURIAM:

On September 5, 1974, two police officers observed Lloyd Johnson make approximately six narcotics transactions in front of 1401 Fairmont Street. The officers saw Ulysses Anderson in the immediate vicinity of Johnson while the transactions were being made. Johnson and Anderson left the area in a car at about 12:30 p.m. Forty-five minutes later, the policemen spotted the car and stopped it on the 1400 block of Euclid Street. Johnson was driving, Anderson was in the rear passenger seat, and appellant was in the front passenger seat. When the three men exited the car, the officers observed, in plain view, three bundles of heroin, each containing approximately 15 glassine bags, on the car floor near where Anderson's feet had been, and three more bundles on the floor between the front door and the front passenger seat, where appellant had been sitting; a search of Johnson uncovered one additional bundle.

Appellant was tried together with Anderson and was convicted for possession of heroin with intent to distribute under 21 U.S.C. § 841(a). His initial two-to-six-year sentence eventually was vacated, and he was committed to the custody of the Attorney General for treatment for a period not to exceed ten years pursuant to the Narcotics Addict Rehabilitation Act, 18 U.S.C. §§ 4253–55.

Appellant contends first, that he was denied an adequate instruction as to his theory of the case, and second, that the trial judge's interruption and denial of his request for a separate jury poll as to the two defendants was error. Finding no error, we affirm.

I.

With respect to defendant's theory of the case, the court instructed the jury as follows:

Now the controlling issue in this case is whether or not these defendants possessed this heroin with intent to distribute.

Now it is the theory of the defendants that they were merely present in the vicinity of the heroin and that this was not in their possession.

. . . Mere presence in the vicinity of a narcotic drug or mere knowledge of its physical location does not constitute possession.

(Tr. 109–110.)

Appellant contends that this instruction failed to adequately state the facts supporting his theory. Specifically, the instructions omitted any review of testimony that appellant was not involved in the narcotics transactions observed prior to the arrest, and that he had been in the car driven by Johnson only minutes before police stopped it.

The settled law in this circuit is that a defendant is entitled to an instruction on his theory of the case when properly requested by counsel and when the theory is supported by any evidence. *Brooke v. United States,* 128 U.S.App.D.C. 19, 385 F.2d 279, 284 (1967). But a trial court need not "rehearse the evidence, especially where the effect would be . . . to give special emphasis to the defendant's testimony." *Laughlin v. United States,* 128 U.S.App. D.C. 27, 385 F.2d 287, 294 (1967), *cert. denied,* 390 U.S. 1003, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968). Since the court did not review the facts relied on by the government or otherwise lend undue weight to its theory, rehearsal of the facts relied on by the defendant was not needed to redress any imbalance in the charge. Nor are the facts here so complex that a theory of the defense instruction would be ineffective unless they were incorporated in it. See

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

*Laughlin, supra,* at 294, and *Laughlin v. United States,* 154 U.S.App.D.C. 196, 474 F.2d 444, 455 (1972).

Appellant also argues that the court's theory of the defense instruction unnecessarily tied him in with the "dubious theory" advanced by his co-defendant Anderson. However, the legal theory relied on by the two defendants was the same—a denial of possession—and was accurately presented in the court's instructions. The distinction that appellant advances is a factual one, based on his uncontroverted absence when the drug transactions were observed, and Anderson's alleged presence at that time. As noted *supra,* however, the court generally need not recite the defendant's evidence in its instructions. Moreover, the judge clearly instructed the jury to consider the guilt or innocence of each defendant independently:

> Now, in this case ladies and gentlemen, as you know, from the beginning, we have two defendants and two counts. You should give separate consideration and render separate verdicts with respect to each defendant as to each count.

> Each defendant is entitled to have his guilt or innocence as to his—each of his crimes—each of the crimes charged against determined from his own conduct and from the evidence that applies to him as if he were being tried alone.

> And the guilt or innocence of one of the defendants in any of the crimes charged should not control or influence your verdict of guilty or not guilty with respect to any defendant on any count.

(Tr. 112–113.)

■ Finally, appellant complains that the court failed to inform the jury that defendant's theory, if believed, required a verdict of not guilty. The court, however, did instruct the jury that the burden was on the government to prove all elements of the crime beyond a reasonable doubt, that if the government failed to sustain this burden the jury had to reach a verdict of not guilty, that the elements of the offense were knowing and intentional possession of

heroin with specific intent to distribute, that the defendants' theory was that they were merely in the vicinity of the drugs and not in possession of them, and finally that "mere presence in the vicinity of a narcotic drug, or mere knowledge of its physical location does not constitute possession." (Tr. 103, 108–110.) These instructions were delivered in a unified, coherent form. Although it would have been preferable to specifically instruct the jury that defendant's theory, if believed, constituted a sufficient defense, the form chosen by the court did not result in error here.

## II

After the foreman returned with the verdict, the following interchange took place:

> THE COURT: Ladies and gentlemen of the jury, I am going to ask you this question: is your verdict the same as that announced by the foreman, Mr. Smith, and your answer to that will be yes or no.

> Ladies and gentlemen of the jury, Mr. Smith has announced the verdict of the jury as having been one of guilty against each defendant, Mr. Anderson and Mr. Mathis, and as I call your name, you will please respond to the question is your verdict the same as that announced by the foreman.

> DEFENSE COUNSEL: I would request to have them polled individually for—

> THE COURT: We don't do that in this courtroom. Thank you, Mr. Kleiman.

The jurors were then polled, and each indicated his agreement with the verdict.

■ Appellant suggests that the court's interruption of his request is itself plain error affecting substantial rights under Fed.R.Crim.P. 52(b). It cannot be denied that for a judge to rule intelligently on a request or objection, he at least must allow counsel to state it. Furthermore, unless it is obvious from context, "counsel should be permitted to state succinctly the grounds" on which he relies. American Bar Association Project on Standards for Crimi-

nal Justice, Standards Relating to the Function of the Trial Judge 5.7 (App.Draft 1972). Fed.R.Crim.P. 51 provides that "if a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice him." Since under Rule 51 we may consider issues that parties had no opportunity to raise below as if they had been raised, C. Wright, Federal Practice and Procedure: Criminal § 842 (1969), denying appellant an opportunity to make his request cannot be said to have affected his substantial rights.

■ Appellant claims that denial of a separate jury poll as to the two defendants was reversible error. Fed.R.Crim.P. 31(d) provides that "when a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion." The purpose of the poll is to test the uncoerced unanimity of the verdict by requiring "each juror to answer for himself, thus creating individual responsibility, *eliminating any uncertainty* as to the verdict announced by the foreman." *Frady v. United States,* 121 U.S. App.D.C. 78, 348 F.2d 84 (1965) (en banc) (plurality opinion by Fahy, J.), *quoting State v. Vaszorich,* 13 N.J. 99, 126, 98 A.2d 299, 314 (Brennan, J.), *cert. denied,* 346 U.S. 900, 74 S.Ct. 219, 98 L.Ed. 400 (1953). Since jury polls are a matter where "the need for clarity is at its zenith," *Williams v. United States,* 136 U.S.App.D.C. 158, 419 F.2d 740 (1969) (en banc), the court should shape the form of the poll so as to minimize possible confusion by the jurors. We suggested in *Williams* that "archaic and confusing language" should be avoided in polling the jury, *supra* at 747. Ambiguous or misleading forms should be avoided as well.

■ The form used here—a single poll for multiple defendants—may entail risks of confusion, especially in complicated cases. If the same verdict is reached for all defendants, there is the possibility that a single poll would fail to uncover situations where the jury convicted all defendants although only persuaded beyond a reasonable doubt of the guilt of some. Where different verdicts are reached as to various defendants, a single poll could hide a juror's confusion over which defendant he intended to acquit. Separate polls for each of several defendants, would not necessarily cure these evils. But they would focus the attention of the jurors on their verdict as to each individual defendant, and thus provide a better mechanism for uncovering jurors' possible difficulties in differentiating between defendants.[1] It may be preferable, as a prophylactic measure to minimize the dangers of confusion and avoid the possibility of error, to grant requests for separate polls.

We do not, however, purport to establish a uniform rule. Nor do we hold that the administration of a single poll was error here. The trial lasted only one day and was relatively uncomplicated. Only four witnesses testified: two police officers and the two defendants. In the instructions the judge took care to remind the jurors that they were to consider the guilt or innocence of each defendant separately. In the poll, he asked the jurors if they agreed to the verdict as to *each* defendant. Their response gave no indication of any confusion. In light of these circumstances, we conclude that the judgment below should be affirmed.

---

1. The various counts of an indictment, like multiple defendants in a trial, are also susceptible to jury problems of differentiation.